**NELSON et ux. v. LAMB et ux.**

No. 14607.

Court of Civil Appeals of Texas. Dallas.

Oct. 24, 1952.

Ralph C. Watson and J. T. Barfield, both of Dallas, for appellants.

Templeton & Gauen, and John E. V. Jasper, all of Dallas, for appellees.

YOUNG, Justice.

The suit of appellees in trial court was in nature of trespass to try title, with prayer for immediate relief by way of temporary injunction; and upon a prompt hearing, defendants (appellants here) were restrained from continuing the construction of a building on rear of the leased premises and this appeal followed entry of such interlocutory order.

Nelson and wife were owners of the property involved, with the Lambs as tenants in possession; and the litigants may be referred to herein as lessor and lessee. On August 1, 1949 a contract of lease was signed by the parties covering the "following described property, to wit: Lying and being situated in the County of Dallas, State of Texas, and being known as 1434 South Fitzhugh, Dallas, Texas." Duration of lease was five years, for residential purposes only, lessee agreeing to pay $75 per month in advance; lessor requiring a deposit of $375 to cover last five months of the term ending July 31, 1954. Paragraph 4 of the instrument provided: "That on failure to pay the rent in advance, as aforesaid, or to comply with any of the foregoing obligations, or in violation of any of the foregoing covenants, the Lessor may declare this lease forfeited at Lessor's discretion and Lessor or Lessor's agent or attor-

ney shall have the power to enter and hold, occupy and repossess the entire premises hereinbefore described, as before the execution of these presents."

It was not disputed that the lot in question, designated as 1434 South Fitzhugh, was 68 x 185 feet in size and that about March 1, 1952 Nelson, lessor, began the construction of a building "for storage and servant's quarters" on the rear end of said lot, at which time there were no arrears of rent; that a default occurred in May and June rental payments, the lessee's suit for trespass to try title and injunction being filed May 26, 1952. In the meanwhile, by letter of May. 10, lessor had advised these tenants that the failure to pay the May rental constituted a breach of the lease contract; that same was thereby terminated, —demanding immediate possession. The trial court found in the judgment appealed from that "defendants will probably proceed to complete and rent that certain building in process of construction described in plaintiffs' said petition, in probable derogation of the rights of plaintiffs herein, unless enjoined and restrained by the court from so doing; that plaintiffs have no adequate remedy at law and will probably suffer irreparable loss and damage; * * *"; the court order requiring of lessee the payment to defendants of said May and June rentals, which had been tendered into court; the injunction issuing upon execution of bond in sum of $1,500.

The only pleading of defendants was in form of motion for judgment filed after the hearing; asserting that, undisputedly, the lease had terminated because of default in rental payments under provisions of paragraph 4 above quoted; and numerous of their propositions upon appeal invoke this provision of the lease; further arguing that (point 5), "Leasing of the property 'known as 1434 South Fitzhugh, Dallas, Texas' for 'residential purposes and no other' did not as a matter of law give appellees (plaintiffs below) a right to control the use of the entire area of land adjoining same; (point 6) Appellants (defendants below) did not lease to appellees (plaintiffs below) the land upon which the building in question was being erected; (point 7) Appellees (plaintiffs below) offered no evidence that the mere erection of the building in question would interfere with their occupancy of the premises described in said alleged lease 'for residential purposes.'"

The cause of action pled herein by lessee was one of wrongful entry by the landlord upon the leased premises; in other words, a breach of covenant for quiet enjoyment thereof during the term, and evidence has been adduced in support of such allegations —establishing, at least, a prima facie case; and in this connection we must observe that the points advanced by appellants obviously relate to matters for probable adjudication on final trial.[1]

1. Even on final trial, the issue of contract breach for failure to pay the designated installment of rent may be precluded under the following statement from 36 C.J., p. 315 (52 C.J.S., Landlord and Tenant, § 480, page 240), and quoted in Ellison v. Charbonneau, 101 S.W.2d 310, 316: "According to the general rule, an eviction of the tenant from a portion of the demised premises, by the landlord, or by his authority, operates as a suspension of the entire rent until the premises are restored to the tenant, although he remains in possession of the remainder of the premises demised."

Likewise, a covenant for quiet enjoyment is embodied in a lease contract by implication from the words "demise" and "lease." 27 T.J., p. 269; L-M-S., Inc., v. Blackwell, 149 Tex. 348, 233 S.W.2d 286; and whether the lessee here is entitled to possession of the entire lot is dependent upon a construction of the instant lease, following a full development of the facts in view of the further statement from 51 C.J.S., Landlord and Tenant, § 290, page 944: "A lease of premises by street number ordinarily includes so much of the lot on which it is situated as may be essential for use of the premises for the purpose for which they were leased, but nothing more." Numerous cases cited under the section quoted hold that property leased by street number includes at least the lot on which the building is located. See Killian v. Welfare Engineering Co., 328 Ill.App. 375, 66 N.E.2d 305; Armstrong v. Crilly, 152 Ill. 646, 38 N.E. 936. On the other hand, testimony by appellant thus far tends to raise the issue of acquiescence by lessee in the attempted improvements in consideration of a reduction of rent.

The attention of litigants is again called to the fact that upon appeal from the grant or refusal of temporary injunction our examination is ordinarily limited to a review of the trial court's discretion, i. e., whether or not same has been reasonably exercised. And the propriety of its action will be determined "from the probability of right and the probability of injury thereto if the injunction be not granted, as shown by the pleadings and evidence addressed to those questions." 24 T.J., p. 178. The principles of law, well stated in Brewer v. Height, Tex.Civ.App., 219 S.W.2d 516, 518, are equally applicable here, in view of which the order in question must be affirmed: "The purpose of a temporary injunction is to maintain the status quo regarding the matters in controversy until such time as a final hearing may be had on the issues. James v. E. Weinstein & Sons, Tex.Com. App., 12 S.W.2d 959. Our courts have held that the granting or refusing of a temporary injunction is a matter within the sound discretion of a trial court and that a trial court's action in either granting or refusing a temporary injunction will not be disturbed on appeal unless it clearly appears from the record that such discretion has been abused. Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964; Southwestern Greyhound Lines v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235; Dallas General Drivers, Warehousemen and Helpers Local Union No. 745 v. Oak Cliff Baking Co., Tex.Civ.App., 203 S.W.2d 586. Moreover, our courts have held that although the discretion of a trial court is subject to review, an appellate court is not authorized to exercise its discretion as to the propriety of granting or refusing a temporary injunction. 24 Texas Jurisprudence 315. * * If the record reveals that the applicants for the temporary injunction showed a right to be protected and a threatened impairment or destruction of that right before a final hearing could be had (and these need not be established with absolute certainty, then the action of the trial court will be sustained. Rosenfield v. Seifert, Tex.Civ.App., 270 S.W. 220; City of Amarillo v. Garwood, Tex.Civ.App., 63 S.W.2d 888, writ refused."

This case is accordingly affirmed.